UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FEINER FAMILY TRUST, Individually and on Behalf of All
Others Similarly Situated, and Derivatively on Behalf of
XCELERA.COM, INC., a Cayman Islands Corporation,            07 Civ. 1914 (RPP)

                                  Plaintiff,            **OPINION AND**
                                                   **ORDER**

               - against -

VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M.
VIK, and MICHAEL J. KUGLER,

                                  Defendants,

               - and -

XCELERA.COM, INC., a Cayman Island Corporation,

                                  Nominal Defendant.
------------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       On March 5, 2007, Feiner Family Trust ("Feiner"), which is a shareholder of Xcelera.com, Inc. ("Xcelera"), filed a two-count complaint. Count I is a derivative claim on behalf of Xcelera against Gustav Vik, Alexander Vik, and Michael Kugler ("Director Defendants") for breach of fiduciary duty. Count II is a purported class action claim against the Director Defendants and VBI Corporation ("VBI") for breach of fiduciary duties owed to all those who currently own Xcelera common stock, or who have sold Xcelera common stock to Gustav Vik and Alexander Vik ("Vik Defendants") during the time of the alleged wrongful conduct.

       On April 3, 2007, Xcelera moved for dismissal of the Complaint for: (1) lack of diversity jurisdiction; (2) lack of Article III standing; (3) lack of standing to bring a derivative suit; (4) failure to state a claim for breach of fiduciary duty; and (5) failure to

comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The Director Defendants have joined in Xcelera's motion to dismiss and adopted the positions of Xcelera's motion papers by reference.[1] As of the date of oral argument on this motion, July 18, 2007, service had not yet been effected on VBI.

For the foregoing reasons, Defendants' motion is granted in part, and Plaintiff's complaint is dismissed.

## I. FACTUAL ALLEGATIONS[2]

### A. The Parties

Xcelera is a Cayman Islands corporation "focused on founding, developing, operating and financing technology companies and managing its portfolio of assets." (Compl. ¶ 9.) Xcelera's common stock – formerly a registered equity with the SEC – was traded on the American Stock Exchange ("AMEX") from 1986 until December 14, 2004 when it was delisted. (Id. ¶¶ 9, 24.) Subsequently, Xcelera's stock was traded exclusively over-the-counter – on the "Pink Sheets" – until November 3, 2006 when the SEC revoked the registration of Xcelera's securities. (Id. ¶ 24.)

Xcelera's major shareholders are VBI Corporation ("VBI"),[3] Alexander Vik, and Gustav Vik, owning 61.2%, 9.8% and 5.3%, respectively, of the company's voting securities as of June 30, 2003. (Id. ¶¶ 10-12.) Alexander Vik is Chairman and CEO of Xcelera. (Id. ¶ 11.) Gustav Vik is a Director and the Executive Vice President, Treasurer and Secretary of Xcelera. (Id. ¶ 12.) Defendant Michael Kugler – not alleged to be a

---

[1] Additionally, the Director Defendants have moved for dismissal based on lack of personal jurisdiction. Kugler also claims insufficient service of process. The issues raised in Xcelera's motion being dispositive, these claims are not addressed.

[2] Since this is the review of a motion to dismiss, the allegations in the Complaint as accepted as true. Hill v. City of New York, 45 F.3d 653, 657 (2d Cir. 1995).

[3] VBI is a private investment firm incorporated in the British Virgin Islands, and it is owned by Alexander Vik, Gustav Vik, and Erik Vik. (Compl. ¶ 10.) Alexander Vik is VBI's Chairman and CEO. (Id. ¶ 11.)

shareholder – is a Director and the Executive Vice President of Xcelera; and as such, is responsible for managing financial operations and investor relations. (Compl. ¶ 13.) Plaintiff, Feiner Family Trust, is a minority holder of Xcelera common stock. (Id. ¶ 8.)

### B.   The Alleged Scheme

The Complaint alleges a fraudulent scheme designed by the controlling shareholders of Xcelera – Alexander M. Vik, Gustav M. Vik, and VBI Corporation – to purchase Xcelera common stock from minority shareholders at severely depressed prices. (Id. ¶¶ 54-55.) The scheme entailed deliberately depressing Xcelera's common stock price by failing to make required SEC filings or publish any information regarding the company's assets and operations to investors or shareholders. Since Xcelera's securities were registered under section 12 of the Exchange Act, the company was required to file annual financial reports with the SEC pursuant to Rule 13a-1 promulgated under section 13(a) of the Exchange Act. (Id. ¶ 29.) Xcelera's agreement with AMEX similarly required the company to "file certain information, documents and reports with the SEC in order to provide adequate public disclosure regarding its financial and operation results." (Id.)

On August 2004, Xcelera failed to file a report with the SEC for the fiscal year ending January 31, 2004 as required. (Id. ¶ 34.)[4] Although Xcelera's website represented that the company intended to file by November, 15, 2004, the filing was never made. (Id. ¶ 37.) As a result, on December 1, 2004, AMEX applied to the SEC to

---

[4] On February 3, 2004, the Xcelera received a letter from the SEC seeking additional information to determine if Xcelera qualified as an "investment company" under the Investment Company Act of 1940 ("ICA"), which would subject Xcelera to the ICA's regulations and disclosure requirements. (Compl. ¶¶ 31-32.) On April 15, 2004, Xcelera responded by letter including some supplemental information. (Id. ¶ 33.) The SEC responded by letter on August 16, 2004, requiring Xcelera to demonstrate that it was not an investment company under the ICA. (Id. ¶ 36.) Subsequently, Xcelera has not disclosed to the public whether the SEC declared Xcelera an investment company under the ICA. (Id. ¶ 38.)

strike Xcelera's common stock from listing and registration on the exchange. (Compl. ¶¶ 43-44.)[5] On December 13, 2004, the SEC granted AMEX's application. (Id. ¶ 45.) As a result of Amex's delisting, Xcelera shares were only traded over-the-counter on the "Pink Sheets." (Id. ¶ 46.) Thereafter, Xcelera has failed to file any reports with the SEC since August 2, 2005 when Xcelera disclosed it would not file an annual report for the fiscal year ending January 31, 2005. (Id. 47.)

On August 28, 2006, the SEC temporarily suspended the trading of Xcelera securities due to the company's continuing failures to file periodic reports containing current financial and operation information. (Id. ¶ 48.) On September 27, 2006, the SEC issued an Order Instituting Proceedings to determine whether the registration of Xcelera securities should be suspended or revoked. (Id. ¶ 49.) On October 27, 2006, Xcelera notified the SEC that Xcelera was not contesting the proceedings and had no objection to the revocation of the registration of its securities. (Id. ¶ 50.) As a result of Xcelera's failure to file an answer, the SEC revoked the registration of Xcelera's securities on November 3, 2006. (Id. ¶ 52.) Xcelera's securities are no longer permitted to be traded in the U.S. or elsewhere in the world. (Id. ¶ 53.) The delisting by AMEX and the SEC's revocation of Xcelera securities are alleged to have been designed by the Vik Defendants as part of a scheme to deprive Plaintiff and minority stockholders of knowing the intrinsic value of Xcelera securities, thereby weakening Xcelera's stock for the Defendants' own personal benefit. (Id. ¶ 54.) The alleged scheme involves the direct solicitation of Xcelera's minority shareholders to sell their holdings to Xcelera at artificially low prices. (Id. ¶ 55.) With this knowledge, Defendant Kugler, a Xcelera director, "in contact with

---

[5] On September, 20, 2004, AMEX notified Xcelera that it was going to initiate delisting procedures. (Compl. ¶ 40.) On September 27, 2004, Xcelera appealed AMEX's determination and requested a hearing. (Id. ¶ 41.) On November 4, 2004, AMEX notified Xcelera that its appeal was denied. (Id. ¶ 42.)

4

Xcelera shareholders is offering to buy and has bought their shares of Common Stock on behalf of Xcelera for between twenty and twenty-five cents per share." (Id. ¶ 55.)[6] These "solicitations have failed to disclose any information regarding Xcelera and its subsidiaries and operations, which, once released to the public, could result in significant increases to the Company's market value." (Id. ¶ 55.)

### C. The Causes of Action

Count I of the Complaint realleges ¶¶1-56, and asserts a derivative claim brought on behalf of Xcelera against the Director Defendants for breach of fiduciary the duties of care, loyalty and good faith to the company in connection with their failure to file timely reports with the SEC. (Id. ¶ 56-58.) It charges that Xcelera has suffered substantial damages based on the following: a) depriving its stockholders from trading its securities in a public market resulting from AMEX delisting Xcelera's securities; b) depriving its shareholders and the investment community from obtaining accurate and truthful information about Xcelera by consenting to have the SEC delist its securities; and c) causing a diminution in the value of company shares, so that the Vik Defendants could purchase stock at less than its intrinsic value, thereby perpetuating fraud on the minority under Cayman Islands law. (Id. ¶¶ 59-60.) Count II is a proposed class action claim brought on behalf of the class of minority shareholders similarly situated to Plaintiff against the Director Defendants and VBI for breach of fiduciary duties in connection with their solicitation of minority shareholders to sell Xcelera common stock without disclosing any information about the company. (Id. ¶¶ 63-69.)

## II. DISCUSSION

---

[6] The Complaint does not allege that Plaintiff was solicited by Kugler or sold any of its own shares to Xcelera.

Xcelera's motion to dismiss rests on five grounds: (1) lack of diversity jurisdiction; (2) lack of Article III standing; (3) lack of standing to bring a derivative suit under Cayman Islands law; (4) failure to state a claim for breach of fiduciary duty under Cayman Islands law; and (5) failure to comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Defendants' motions to dismiss for lack of diversity jurisdiction and for lack of Article III standing are denied.  The motion to dismiss Count I of the Complaint for lack of standing to bring a derivative suit under Cayman Islands law is granted.  The motion to dismiss Count II for failure to state a claim for breach of fiduciary duty under Cayman Islands law is also granted.  Since no counts of the Complaint remain, the issue of whether the Complaint fails to comply with the Rule 9(b) is not addressed in this opinion.

A. **Jurisdiction**

Before addressing the merits of either count of the complaint, the Court must address Defendants' contention that it (1) does not have diversity jurisdiction and (2) that Plaintiff does not have Article III standing for Count II of the claim.  See Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996) ("[Courts] must address jurisdictional questions before reaching the merits.").

1. **Diversity Jurisdiction**

Based on the May 3, 2007 Affidavit of Barry Feiner submitted by Plaintiff – stating that Mr. Feiner is the sole Trustee of the Feiner Family Trust and a citizen of New York – the Director Defendants do not contest subject matter jurisdiction based on

6

diversity.[7] For purposes of diversity, a trust is a citizen of the state where its trustee is domiciled. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 462 (1980). Thus, since Xcelera and Plaintiff are citizens of different states, and the other Defendants are citizens of different states than the Plaintiff, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 at this stage of the case. See Night Hawk Ltd. v. Briarpatch Ltd., 263 F. Supp. 2d 700, 702 (S.D.N.Y. 2003) (a foreign corporation is a citizen of its principal place of business and place of incorporation).[8]

2. **Article III Standing**

Defendants have moved that Count II – a class action against Kugler, Alexander Vik, Gustav Vik, and VBI for breach of fiduciary duties to Plaintiff and other minority shareholders – be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing to sue under Article III of the Constitution.

"Article III of the U.S. Constitution requires that a 'case' or 'controversy' be present in order to confer [jurisdiction] on federal courts for a particular claim; standing to sue is an essential component of that requirement." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (citing Allen v. Wright, 468 U.S. 737, 750 (1984) and Warth v. Seldin, 422 U.S. 490, 498 (1975)). In order to have standing, three elements must be satisfied. First, Plaintiff must have suffered an injury in fact, i.e., an actual or threatened injury which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S.

---

[7] See Memorandum of Law in Support of Michael J. Kugler's Motion to Dismiss, at n. 2; Memorandum of Law in Support of Alexander M. Vik's Motion to Dismiss, at n. 2; Memorandum of Law in Support of Gustav M. Vik's Motion to Dismiss, at n. 2.
[8] Plaintiff provided an unopposed declaration stating that Xcelera is a Cayman Islands corporation with its principal place of business in either Monaco or Connecticut. (See Declaration of Jeffrey S. Abraham in Support of Plaintiff's Opposition to Nominal Defendant Xcelera Inc.'s Motion to Dismiss, ¶¶ 3-5.)

555, 560 (1992). Second, there must be a causal connection between the injury and the alleged conduct of the defendants. Id. "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561. Plaintiff bears the burden of establishing standing under Article III. See id.; see also Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

In order to have Article III standing for its class action claim – Count II – Plaintiff must have standing to litigate its own claim for breach of fiduciary duty independently. See Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20 (1976).

Count II alleges that Defendants' breach of their fiduciary duty of disclosure has led "Plaintiff and members of the Class [to] suffer[] substantial damages resulting from the solicitation of their Xcelera shares at significantly less than the stock's intrinsic value." (Compl. ¶ 67.) Although the Complaint alleges that Kugler offered to buy and has bought shares of Xcelera Common Stock on behalf of the Company from certain Xcelera shareholders, (see id. ¶ 55), the Complaint does not allege that Plaintiff was one of these shareholders. Thus, Plaintiff has not established that it was injured by selling its stock at a reduced rate or by being solicited to do so.[9]

The Complaint also alleges that Plaintiff was peripherally damaged by Defendants' management of Xcelera, due to its decision to solicit and purchase shares from other minority shareholders at drastically reduced rates. Specifically, the Complaint alleges that Plaintiff was injured by Defendants' fraud in: (1) permitting AMEX's delisting of Xcelera's securities; (2) allowing the SEC's revocation of Xcelera's security

---

[9] Instead, as alleged, this scheme would theoretically increase the value of all unsold shares, including Plaintiff's. See infra n. 13.

8

registration; (3) thwarting the dissemination of accurate and truthful information concerning Xcelera; and (4) causing the resultant drastic diminution in market value of Xcelera stock. (Compl. ¶ 59.)[10] The relevant inquiry is whether this type of harm constitutes an "injury in fact" for purposes of Article III standing. Lujan, 504 U.S. at 560.

Defendants rely on Salsitz v. Peltz, 210 F.R.D. 95, 99 (S.D.N.Y. 2002) for the proposition that a solicitation of shares without more is not compensable injury sufficient to confer standing. In Salsitz, the court held that a Plaintiff's claim that he was "forced to decide" whether to tender his stock was not an "injury in fact" where Plaintiff actually benefited from his decision not to tender and did not rely on any material misrepresentations in making this decision. Salsitz is not applicable to the case at hand. Plaintiff claims it has been, and is being, deprived of a market in which to sell stock rather than being forced to decide whether or not to tender stock. Here Plaintiff's claim that Defendants' alleged fraudulent conduct deprived Plaintiff of any market for its stock is not conjecture or hypothetical. Instead, it is actual and sufficiently concrete to constitute an injury in fact and satisfy Article III's "case or controversy" requirement. See Lujan, 504 U.S. at 560.

Subject matter jurisdiction exists for both counts of the Complaint. Therefore, the Court will proceed to analyze the merits of the Motion to Dismiss.

**B.     Standing to Bring Derivative Claim Under Cayman Islands Law**

Count I of the Complaint is a derivative claim brought under Cayman Islands law. (Compl. ¶60.) It alleges that Xcelera's failure to comply with SEC regulations, its expulsion from AMEX, and the revocation of its registered securities by the SEC, were

---

[10] Although these allegations are contained in Count I, they are realleged in Count II. (Compl. ¶ 63.)

part of a scheme by Defendants to defraud the Plaintiff and other members of the class from knowing the intrinsic value of Xcelera's stock, thereby artificially weakening Xcelera's stock price for Defendants' own personal benefit. (Id. ¶54). It also alleges that the scheme involves the direct solicitation of minority shareholders to sell their shares at artificially low prices; that as a result of Defendants' failure to publish Xcelera's financial and operating results, shareholders are compelled to relinquish their stock based entirely on information provided by the Vik Defendants and their agents; and that if information about Xcelera was released to the public, it could result in significant increases in Xcelera's market value. (Id. at ¶55.) Accordingly, the Complaint asserts that the Defendants have fraudulently reaped, and are continuing to fraudulently reap, any potential appreciation in Xcelera's stock entirely for themselves. (Id.) Xcelera is alleged to have been injured as a result of the Directors' reckless disregard of their fiduciary duties by failing to use the information to advance commercial and financial opportunities for the company's benefit. (Id. at ¶62)

A federal district court sitting in diversity must apply the choice of law analysis of the state where the court sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Since Xcelera is incorporated in the Cayman Islands, (Compl. ¶ 9), Cayman Islands law applies to Plaintiff's derivative claims and claims for breach of fiduciary duty. See Hausman v. Buckley, 299 F.2d 696, 702 (2d Cir. 1962) (summarizing New York's "internal affairs" choice-of-law rule to mean that "[t]he right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation").

Derivative shareholder suits are limited under Cayman Islands law by the English common law doctrine created by Foss v. Harbottle, [1843] 2 Hare 461; Schultz v. Reynolds, [1992-93] C.I.L.R. 59 (Cayman Islands A.C.).  Foss v. Harbottle established that shareholders cannot ordinarily bring derivative actions for wrongs to the company since the company itself would be the proper plaintiff.  Schultz, [1992-93] C.I.L.R. at 63-64.  There are a number of narrow exceptions to this rule.  Id. at 64.  To claim standing in this case, Plaintiff invokes the "fraud on the minority" exception to the rule in Foss v. Harbottle.[11]  This exception was "introduced on the ground of necessity alone in order to prevent a wrong going without redress."  Konamaneni v. Rolls Royce (India) Ltd., [2002] 1 WLR 1269, 1277 (Chancery Division) (quoting Smith v. Croft, [1988] 1 Ch. 114, 185).  For this exception to apply, "[t]here must be a minority who are prevented from remedying the fraud or taking any proceedings because of the protection given to the fraudulent shareholders or directors by virtue of their majority."  Daniels v. Daniels, [1978] Ch. 406, 408 (Eng. Ch. 1977).

A claim of fraud on the minority requires Plaintiff to show that the alleged wrongdoers: (1) control the company; and (2) committed "fraud."  See Konamaneni, [2002] 1 WLR at 1278; see also In re Tyco Int'l., Ltd., 340 F. Supp. 2d 94, 102 (D.N.H. 2004).  There is no dispute that the Vik Defendants control the company.  However, fraud in this context differs from the American understanding of the term in that it is refers to "self-dealing" at the company's expense.  See Konamaneni, [2002] 1 WLR at 1278 ("Fraud includes all cases where the wrongdoers are endeavouring, directly or indirectly, to appropriate themselves money, property or advantages which belong to the company

---

[11] Specifically, Plaintiff asserts that "[a]s a result of their wrongful conduct and actions in violation of their fiduciary duties, the Director Defendants have caused Defendants to perpetrate a 'fraud on the minority' shareholders of Xcelera within the meaning of the law of the Cayman Islands."  (Id. ¶¶ 60-61.)

11

or in which the other shareholders are entitled to participate."); Daniels, [1978] Ch. at 414 (stating that "a minority shareholder may sue where directors use their powers, intentionally or unintentionally, fraudulently or negligently, in a manner which benefits themselves at the expense of the company"); see also Seghers v. Thompson, No. 06 Civ. 308, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006); In re Tyco, 340 F. Supp. 2d at 102 ("English courts speak of fraud in this context in a broader equitable sense in which control is misused to benefit the wrongdoers at the company's expense."). "Apart from the benefit to themselves at the company's expense, the essence of the [exception] seems to be an abuse or misuse of power." Schultz, [1992-93] C.I.L.R. at 78 (quoting Estamanco (Kilner House) Ltd. v. G.L.C. [1982] 1 All E.R. 437, 445).

There is no dispute over whether Defendants control Xcelera; the Vik Defendants and VBI own more than 76% of the voting securities. (Compl. ¶¶ 10-12.)[12] However, the Complaint fails to allege that Defendants misused this control "in a manner which benefits themselves at the *expense of the company*." Daniels, [1978] Ch. 406 at 414 (emphasis added). Assuming the Complaint's allegations to be true, the Complaint does not state facts showing that the Defendants have benefited themselves at the expense of Xcelera. Thus, the "fraud on the minority" exception to the rule in Foss v. Harbottle does not apply. See Daniels, [1978] Ch. 406 at 414; see also In re Tyco, 340 F. Supp. at 99.

The Complaint only alleges that Xcelera, through Kugler, solicited and purchased shares from minority shareholders at artificially low prices. (See Compl. ¶ 55.) There are no allegations that any shares from minority shareholders were acquired directly by the individual Defendants at artificially low prices. Thus, the alleged scheme would

---

[12] The Complaint alleges that Kugler "lacks independence from the Vik [Defendants]" since they "exert influence over Kugler's compensation by virtue of their positions as Directors, officers and controlling shareholders of the Company." (Compl. ¶ 17(d).)

12

benefit the majority shareholders, and remaining minority shareholders, by increasing the value of the company[13] at the expense of any minority shareholders who disposed of their shares at deflated prices. The fraud on the minority exception, however, requires that self-dealing to be at the expense of the *company*. See Daniels, [1978] Ch. 406 at 414. As Plaintiff's counsel noted at oral argument, "[i]n theory, the company hasn't suffered any damages itself. In theory, the damages are really at the shareholder level . . . ." (Tr. at 23.) Thus Plaintiff, having failed to allege fraud on the minority properly, lacks standing to sue on Xcelera's behalf under Cayman Islands law.

### C. Failure to State a Direct Claim for Breach of Fiduciary Duty

Count II, the purported class action claim, alleges that the Director and Executive defendants breached their fiduciary duties of disclosure in connection with their solicitation of minority shareholders to sell Xcelera stock without disclosing any information about Xcelera. (Compl. ¶64.) That duty was triggered "once the Defendants or their agents engaged in contact with minority shareholders for the purpose of soliciting the sale of their Xcelera shares." (Id. ¶65.) Count II also alleges that the Defendants concealed all information about Xcelera from their solicitations of minority shareholders, that Plaintiff and members of the class have suffered damages resulting from the solicitation of Xcelera's shares at significantly less than the stocks' intrinsic value, and that "once information regarding Xcelera becomes public, the Vik Defendants will benefit from the full market value of those Xcelera shares that they have acquired from Plaintiff and members of the class." (Id. ¶¶65, 77.)

---

[13] The buyback scheme would theoretically increase the value of all Xcelera stock, benefitting Plaintiff in the same proportion as the majority shareholders since the Complaint does not allege that Plaintiff sold any stock. (See Tr. at 22. (Plaintiff's counsel represented that Plaintiff "has not actually sold its stock back to the Viks.")).

Plaintiff's counsel at oral argument acknowledged that Plaintiff had not been solicited by the Defendants to sell its stock in Xcelera, and had not sold its shares in Xcelera to any Defendant or Xcelera. Accordingly, Plaintiff is not a proper party to bring the claims in Count II. Fed. R. Civ. P. 23.

Count II of the Complaint must also be dismissed for failure to state a claim under Cayman Islands law. First, VBI's sole role is as a majority shareholder, and under Cayman Islands law, majority shareholders do not owe fiduciary duties to the company or to minority shareholders. See Phillips v. Manufacturer's Secs. Ltd., [1917] 116 L.T. 290, 296. Kugler, Alexander Vik, and Gustav Vik are Directors and Officers of Xcelera. Accordingly, Plaintiff cannot sustain a claim for breach of fiduciary duties against VBI or the other Defendants in their capacity of shareholders, since under Cayman Islands law, majority shareholders do not have any fiduciary duty to Plaintiff that could be breached.

Secondly, a director does not owe any fiduciary duties to minority shareholders solely based on his or her relationship to the company. See Peskin v. Anderson, [2001] 1 B.C.L.C. 372 ¶ 29 (noting that "directors of a company are not trustees for individual shareholders, and may purchase their shares without disclosing pending negotiations for the sale of the company's undertaking" (quoting Percival v. Wright [1902] 2 Ch 421)). Nevertheless, a duality of duties may exist where directors, in addition to their duties to the company, owe additional duties to shareholders, that if breached, would permit shareholders to bring direct actions against the directors. Peskin, [2001] 1 B.C.L.C. 372 ¶¶ 31-32. "The fiduciary duties owed to the shareholders . . . are dependent on establishing a special factual relationship between the directors and the shareholders in the particular case." Id. ¶ 33. For example, "[e]vents may take place which bring the

directors of the company into direct and close contact with the shareholders in a manner capable of generating fiduciary obligations." Id. Peskin lists examples of what types of circumstances could lead a fiduciary relationship between directors and shareholders:

> There are, for example, instances of the directors of a company making direct approaches to, and dealing with, the shareholders in relation to a specific transaction and holding themselves out as agents for them in connection with the acquisition or disposal of shares; or making material representations to them; or failing to make material disclosure to them of insider information in the context of negotiations for a take-over of the company's business; or supplying to them specific information and advice on which they have relied. These events are capable of constituting special circumstances and of generating fiduciary obligations, especially in those cases in which the directors, for their own benefit, seek to use their position and special inside knowledge acquired by them to take improper or unfair advantage of the shareholders.

Id. ¶ 34; see also Kohn v. Meehan, (Transcript: Smith Bernal), at ¶101 (Ch. Div. 2003) ("[I]n special circumstances a director may, in addition to the fiduciary duties owed by him to the company, also owe a duty to individual shareholders personally. Where such a duty exists and breach of it has caused loss to a shareholder directly (e.g., by inducing him to part with his shares at an undervalue), the shareholder may bring an action against the director to recover his loss.").

Defendants argue that Count II of the Complaint must be dismissed since it pleads no facts to establish the special circumstances necessary under Cayman Islands law to create a fiduciary duty between the Xcelera directors and Plaintiff as a minority shareholder. Although the Complaint alleges that Kugler solicited and purchased shares from minority shareholders, it does not allege that Plaintiff was solicited or sold any of its own shares to Xcelera or any other Defendant. Nor does the Complaint allege any "direct or close contact" between the Director Defendants and Plaintiff. Peskin, [2001] 1 B.C.L.C. 372 ¶ 33. In short, no facts were pled that indicate any relationship between the

15

Director Defendants and Plaintiff aside from the fact that the Director Defendants are directors of Xcelera, and Plaintiff owns shares in Xcelera. Since the Complaint fails to state 1) any facts which constitute a "special factual relationship" between Director Defendants and Plaintiff; or 2) facts which show the Director Defendants have taken advantage of Plaintiff for their own benefit, as required by Cayman Islands law, see Peskin, [2001] 1 B.C.L.C. 372 ¶ 33; Kohn ¶ 101, Count II does not state a claim for breach of fiduciary duty and must be dismissed.

### III.    CONCLUSION

Defendants' motion is granted in part. Count I of the Complaint is dismissed for lack of standing to bring a derivative suit, since the allegations in the Complaint do not fall within the "fraud on the minority" exception to the rule in Foss v. Harbottle. Count II is dismissed for failure to state a claim for breach of fiduciary duty under Cayman Islands law, since allegations in the Complaint do not demonstrate that VBI or the Director Defendants owed a fiduciary duty to Plaintiff. The Complaint is dismissed with leave to move to file an amended complaint within thirty days of the date of this opinion.

IT IS SO ORDERED.

Dated: New York, New York
       September _10_, 2007

                                    _____
                                    Robert P. Patterson, Jr.
                                    U.S.D.J.

Copy of this Opinion and Order sent to:

Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 1910
New York, NY 10119
Attn:   Jeffrey Abraham
        Jorge Salva
Tel:    212-279-5050
Fax:    212-279-3655
Counsel for Plaintiff

Wilmer Cutler Pickering Hale & Dorr L.L.P.
399 Park Avenue
New York, NY 10022
Attn:   Peter Macdonald
Tel:    212-937-7200
Fax:    212-937-7300
Counsel for Director Defendants

Becker, Glynn, Melamed & Muffly, LLP
299 Park Avenue
New York, NY 10171
Attn:   Robin Alperstein
Tel:    212-888-3033
Fax:    212-888-0255
Counsel for Xcelera.com, Inc.