UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FEINER FAMILY TRUST and RON KRISSEL, Individually and
on Behalf of All Others Similarly Situated,

                                                    07 Civ. 1914 (RPP)

                                    Plaintiffs,

                                                    **OPINION AND
            - against -                              ORDER**

XCELERA.COM, INC., VBI CORPORATION, ALEXANDER
M. VIK, GUSTAV M. VIK, and MICHAEL J. KUGLER,

                                    Defendants,

------------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        This is a purported class action on behalf of Feiner Family Trust ("Feiner"),

Ronald Krissel ("Krissel"), and all others similarly situated ("Plaintiffs").  Plaintiff Feiner

initiated this action on March 5, 2007 by filing a two-count complaint.  On September 10,

2007, this Court granted Defendants' motion to dismiss the original complaint with leave

to file an amended complaint within thirty days.  Plaintiffs have since submitted three

amended complaints, which contained various theories and claims.  After withdrawing

two amended complaints, the present action is a motion for leave to file a third amended

complaint.  For the reasons that follow, Plaintiffs' motion is denied with prejudice.


    I. <u>Procedural History</u>

        A. <u>The Original Complaint</u>

    On March 5, 2007, Feiner, which is a shareholder of Xcelera.com, Inc. ("Xcelera"

or the "Company"), a Cayman Islands corporation, filed a two-count complaint

("Original Complaint").  Count I was a stockholder derivative claim on behalf of Xcelera against Gustav Vik, Alexander Vik, and Michael Kugler ("Director Defendants") for breach of fiduciary duty.  Count II was a purported stockholders class action claim against the Director Defendants and VBI Corporation ("VBI"), controlling shareholders of Xcelera, for breach of fiduciary duties owed to all those who currently own Xcelera common stock, or who had sold Xcelera common stock to Gustav Vik and Alexander Vik ("Vik Defendants") during the time of the alleged wrongful conduct.

On April 3, 2007, Xcelera moved for dismissal of the Complaint for: (1) lack of diversity jurisdiction; (2) lack of Article III standing; (3) lack of standing to bring a derivative suit; (4) failure to state a claim for breach of fiduciary duty; and (5) failure to comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  The Director Defendants joined in Xcelera's motion to dismiss and adopted the positions of Xcelera's motion papers by reference.

On September 10, 2007, this Court dismissed Count I of the Complaint for lack of standing under Cayman Islands law to bring a derivative suit and Count II for failure to state a claim for breach of fiduciary duty under Cayman Island Law.  See Feiner Family Trust v. VBI Corp., 2007 U.S. Dist. LEXIS 66916 (S.D.N.Y. Sept. 11, 2007).  The Opinion granted leave to move to file an amended complaint within thirty days.  Id. at *26.

B.  The First Amended Complaint

On October 9, 2007, Plaintiffs filed a proposed amended complaint ("First Amended Complaint") with a motion for leave to amend, and it included one class action claim of breach of fiduciary duty.  Changes from the Original Complaint included: (1) the

addition of Ron Krissel, who had sold his shares of Xcelera, as a Plaintiff; (2) an allegation that Feiner had been solicited by Defendant Kugler to sell his shares; (3) removal of language related to fraud; and (4) removal of derivative claim.  Defendants' opposition to Plaintiffs' motion for leave to amend challenged the proposed amended complaint on multiple grounds, including failure to plead federal subject matter jurisdiction.

   C. The Second Amended Complaint

  In their reply, Plaintiffs sought to file a revised proposed complaint ("Second Amended Complaint") in order to cure some of the defects in the First Amended Complaint.  Conceding that "[t]here exists a serious challenge to maintaining federal jurisdiction over these claims if a federal cause of action is not alleged since diversity jurisdiction may ultimately be lacking" (see Plaintiffs' Reply Mem., dated December 14, 2007, at 1-2), Plaintiffs added a claim for violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, as well as a claim against VBI, Alexander Vik, and Gustov Vik for violations of Section 20(a) of the Exchange Act. The Second Amended Complaint maintained the claim for breach of fiduciary duty against all Defendants.

  In an Order dated December 20, 2007, the Court rejected the Plaintiffs' attempt to introduce the Second Amended Complaint in their reply papers, but allowed Plaintiffs to file another proposed complaint on the condition that they withdraw the then pending motion for leave to amend.

   D. The Third Amended Complaint

On January 2, 2008, Plaintiffs filed notice of withdrawal of their original motion for leave to amend and filed a new motion with yet another revised proposed complaint ("Third Amended Complaint").  The Third Amended Complaint includes four claims: the breach of fiduciary duty claim (Count IV); two claims for deceptive and manipulative practices in violation of Section 10(b) of the Exchange Act and Rule 10b-5 and Section 20(a) (Counts I and III); and an additional claim against Xcelera for insider trading violations under Section 20A (Count II).

On February 5, 2008, the Defendants submitted a memorandum of law in opposition to Plaintiffs' second motion for leave to amend.  Defendants argued that Plaintiffs' motion should be denied on futility grounds and due to Plaintiffs' undue delay and bad faith.

## II.     FACTUAL ALLEGATIONS[1]

### A.     The Parties

Xcelera is a Cayman Islands corporation "focused on founding, developing, operating and financing technology companies and managing its portfolio of assets." (Third Am. Compl. ¶ 9.)  Xcelera's major shareholders are VBI Corporation ("VBI"),[2] Alexander Vik, and Gustav Vik, owning 61.2%, 9.8% and 5.3%, respectively, of the Company's voting securities as of June 30, 2003.  (Id. ¶¶ 10-12.)  Alexander Vik is Chairman and Chief Executive Officer ("CEO") of Xcelera.  (Id. ¶ 11.)  Gustav Vik is a Director and the Executive Vice President, Treasurer, and Secretary of Xcelera.  (Id. ¶

---

[1] The following factual allegations are taken from the Third Amended Complaint.
[2] VBI is a private investment firm incorporated in the British Virgin Islands, and it is purportedly wholly-owned by Erik Vik, father of Alexander Vik and Gustav Vik.  (Third Am. Compl. ¶ 10.)  Xcelera's 2003 Form 20-F states that "VBI is 'an entity related to' the Vik Brothers."  (Id.)

12.)  Defendant Michael Kugler—not alleged to be a shareholder—is a Director and the Executive Vice President of Xcelera and, as such, is responsible for managing financial operations and investor relations.  (Id. ¶ 14.)

Plaintiff Feiner owns 6,000 shares of Xcelera common stock.  (Id. ¶ 7.) Defendant Kugler, allegedly acting on behalf of Defendants, solicited Feiner to sell its Xcelera stock.  Plaintiff Ron Krissel ("Krissel") is a former shareholder of Xcelera who sold his 25,000 shares "to an agent, acting either on behalf of Xcelera or the Individual Defendants, identified by Defendant Kugler at a price of $0.25 per share negotiated with Kugler."  (Id. ¶ 8.)  Plaintiffs bring this action on behalf of a class (the "Class"), "consisting of all those who either: (a) sold Xcelera stock to any of the Defendants; or (b) continue to hold shares of Xclera common stock."  (Id. ¶ 15.)

### B.    The Alleged Scheme

The Third Amended Complaint alleges essentially the same scheme as the prior three complaints: beginning in or about 2003, the controlling shareholders of Xcelera, by acts or failure to act, have eliminated any market for Xcelera common stock in order to purchase stock from minority shareholders at materially reduced prices.  (Third Am. Compl. ¶ 2.)  Specifically, the Defendants are alleged to have knowingly failed to comply with SEC regulations, and the resulting delisting and deregistration of Xcelera stock has prevented Plaintiffs and other members of the Class from knowing the intrinsic value of the stock. (Id. ¶ 47.)  On November 6, 2006, Defendant Kugler, allegedly acting at the direction of Defendants, solicited Feiner to sell his stock and on February 16, 2007 allegedly identified an agent allegedly acting on behalf of Xcelera or the individual Defendants to purchase his Xcelera stock.  (Id. ¶¶ 7, 8, 48.)  During this period, Kugler

stated that the Company would not publicly report its results, and he also suggested that Class members consult with a tax advisor about recognizing their Xcelera stock as a tax loss.  (Id.)

Xcelera's common stock was registered with the Securities and Exchange Commission ("SEC") and, as an issuer of securities subject to Section 12 of the Exchange Act, Xcelera was required to file annual reports pursuant to Rule 13a-1 promulgated under Section 13(a) of the Exchange Act.  (Id. ¶ 22).  However, Xcelera failed to file a Form 20-F for the fiscal year ending January 31, 2004, even after the SEC granted a 15-day grace period.  (Id. ¶ 29).  On August 3, 2004, Xcelera filed a Form NT 20-F disclosing that the 2004 Form 20-F would be filed as soon as practicable.  (Id. ¶ 30).  Xcelera also filed a Form 6-K stating their anticipated financial results for the fiscal year ending January 31, 2004 would reflect a net loss of $77 million and $57 million in cash, cash equivalents, and marketable securities as of June 30, 2004.  Xcelera's website represented that the 2004 Form 20-F would show revenues of approximately $4 million and losses from operations at about $23 million.  (Id. ¶ 31).   On September 24, 2004, Xcelera filed another Form 6-K that reported that Xcelera also had $62 million in cash, cash equivalents, and marketable securities with no material debt as of August 31, 2004.  (Id. ¶ 33.)  This filing, as well as Xcelera's website, indicated that Xcelera would file an amended 2003 Form 20-F and its 2004 Form 20-F by November 15, 2004, but no such filing was ever made.  (Id. ¶ 34).

On November 4, 2004, the American Stock Exchange ("AMEX") authorized de-listing proceedings, and as of the end of the trading day on November 15, 2004, the Frankfurt Stock Exchange suspended trading of Xcelera stock.  These were the only two

stock exchanges on which Xcelera traded.  (Id. ¶¶ 35, 37).  The AMEX filed an

application with the SEC to strike Xcelera's common stock from listing and registration,

and the SEC granted the AMEX's application in an order dated December 13, 2004.  (Id.

¶¶ 38, 39).  Due to the delisting, Xcelera shares were only traded as unlisted securities on

the Over the Counter Securities Market's Pink Sheets.  (Id. ¶ 40).

On August 28, 2006, the SEC temporarily suspended the trading of Xcelera

securities due to the Company's continuing failures to file periodic reports containing

current financial and operation information.  (Id. ¶ 41.)  On September 27, 2006, the SEC

issued an Order Instituting Proceedings to determine whether the registration of Xcelera

securities should be suspended or revoked.  (Id. ¶ 42.)  On or about October 27, 2006,

Xcelera, through counsel, notified the SEC that Xcelera would not contest the

proceedings and had no objection to the revocation of the registration of its securities.

(Id. ¶ 43.)  As a result of Xcelera's failure to file an answer, the SEC revoked the

registration of Xcelera's securities on November 3, 2006.  (Id. ¶ 44.)  Xcelera's securities

are no longer permitted to be traded in the U.S. or elsewhere in the world.  (Id. ¶ 44.)

Due to the delisting, no current information concerning Xcelera's operations is available

through filings, and the Company does not release financial reports to shareholders or the

public.  (Id. ¶ 45.)

The Third Amended Complaint alleged that Defendants were motivated to cause

the delisting by AMEX and the SEC's revocation of the registration of Xcelera securities

in order to relieve Defendants of the legal obligations and procedural protections

provided by the Investment Company Act of 1940 ("ICA") and the Exchange Act for

minority shareholders.  This "enabled Defendants to effectively dictate the terms of their

purchases of Xcelera securities from minority shareholders because of the absence of any public market for the Company's securities and any public information concerning the Xcelera financial condition or results of operations."  (Id. ¶ 46.)

**III.   Legal Standard**

Although Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave [to amend a pleading] when justice so requires,"  denial of leave to amend is within the court's discretion.  See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).  Reasons for such denial include futility, bad faith, undue delay, or undue prejudice to the opposing party.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

The standard for futility is based upon that of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Bank of New York v. Sasson, 786 F. Supp. 349, 352 (S.D.N.Y. 1992) ("If the claims would be subject to dismissal under Fed. R. Civ. P. 12(b)(6), the court should refuse to grant leave to amend rather than assent and then await a motion to dismiss."); see also Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied.").  In order to satisfy this standard, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Comm'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

Securities fraud claims are held to heightened pleading requirements.  First, in accordance with Fed. R. Civ. P. 9(b), plaintiffs must state with particularity the circumstances constituting fraud or mistake.  "Allegations that are conclusory or unsupported by factual assertions are insufficient."  <u>ATSI</u>, 493 F.3d at 99.  Second, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), plaintiffs bringing private securities fraud actions must also plead scienter by "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).[3]  Consideration must be given to "plausible opposing inferences" when "determining whether the pleaded facts give rise to a 'strong' inference of scienter" under the PSLRA.  <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 127 S. Ct. 2499, 2509 (2007).  In order to be a "strong" inference of scienter, it must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  <u>Id.</u> at 2504-2505.

IV.   <u>Discussion</u>

A.   **Claims for violations of Section 10(b) of the Exchange Act and Rule 10b-5**

Count I of Plaintiffs' Third Amended Complaint alleges that the Defendants engaged in market manipulation in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.[4]  Under the statute, the term "manipulation"

---

[3] Policy considerations regarding the potential for abusive litigation and the "*in terrorem*" effect of securities class actions on settlement values prompted Congress to enact the PSLRA.  <u>See</u> <u>Merril Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71, 81-82 (2006); <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005).

[4] Section 10(b) of the Exchange Act states that it is unlawful "[t]o use or employ…any manipulative or deceptive device" in connection with the purchase or sale of securities.  15 U.S.C. §78j(b).  Rule 10b-5, promulgated under this statute, prohibits any "device, scheme, or artifice to defraud" or "any

generally denotes "practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." <u>Santa Fe Indus. v. Green</u>, 430 U.S. 462, 476 (1977); <u>see also</u> <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 199 (1976) (stating that manipulation "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities"). When determining whether a market manipulation claim exists, courts generally ask whether "the natural interplay of supply and demand" has been affected by deceptive conduct. <u>ATSI</u>, 493 F.3d at 100 (citations omitted).

The PSLRA's heightened pleading requirements apply to market manipulation claims under Rule 10b-5, and the Third Amended Complaint fails to plead with particularity facts which give a strong inference of scienter. <u>See</u> 15 U.S.C. § 78u-4(b)(2). In the Third Amended Complaint, Plaintiffs allege that Defendants, who already own a controlling 76% interest in Xcelera, participated in a scheme to cause the de-registration and de-listing of Xcelera's securities. (Third Am. Compl. ¶¶ 13, 46.) The alleged motive was to relieve the Defendants of legal obligations under (a) the ICA, which provides minority shareholder certain protections, and (b) the Exchange Act "in the context of a tender offer…or a going private transaction." (<u>Id.</u> ¶ 46.) Plaintiffs also allege that the scheme "enabled Defendants to effectively dictate the terms of their purchases of Xcelera securities from minority shareholders because of the absence of any public market for the Company's securities and any public information concerning the Xcelera financial condition or results of operations." (<u>Id.</u>) None of these allegations is supported by

act, practice, or course of business which operates or would operate as a fraud or deceit." 17 C.F.R. §240.10b-5(a) and (c).

particularized factual allegations, nor do they show that Defendants "benefited in a concrete and personal way from the purported fraud." Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000).

The alleged benefits to Defendants are speculative. No prospective purchase of Xcelera or its assets has been alleged. The Third Amended Complaint identifies no potential tender offer or "going private transaction" that Defendants were seeking to effectuate. Moreover, it is not plausible that such a prospective transaction could be stalled for almost five years while Defendants waited for the alleged de-registration scheme to take its course.[5] Plaintiffs also fail to demonstrate how Defendants' actions (or inaction) would yield any benefits to Defendants. To the contrary, Defendants suffered significant losses in stock holdings from the de-listing and de-registration.[6] No allegation in the Third Amended Complaint provides particularized facts to support Plaintiffs' implicit theory that Defendants had a plan to make up for these losses, and in fact gain benefits, from a future tender offer, sale, or "going private" transaction. In short, the motive Plaintiffs allege "defies economic reason" and "does not yield a reasonable [much

---

[5] Notably, the Third Amended Complaint does not allege that Defendants were calling minority shareholders and soliciting them to sell their shares. Instead, the Third Amended Complaint alleges that minority shareholders called Xcelera "to inquire concerning the Company's finances" and only then did Defendant Kugler "decline to provide such information, and solicit[ed] those shareholder to sell those shares to an agent acting on behalf of the Defendants." (Third Am. Compl. ¶ 3.) Therefore, according to the Third Amended Complaint's alleged scheme, Defendants planned to wait indefinitely for minority shareholders to call the Company so that Defendants could offer to buy their stock.

[6] On February 3, 2004, just prior to the start of the alleged scheme, Xcelera's stock was trading at $2.42 per share, which gives Defendants' 96 million shares a combined market value of $232,320,000. (See Declaration of Robin L. Alperstein, sworn to February 5, 2008, Ex. A.) By the time of its delisting from AMEX on December 12, 2004, Xcelera was trading at 36 cents per share, and by the de-registration on November 3, 2006, it was trading at 10 cents per share. (Id.) Defendants' stock was then worth less than $10 million, for collective losses of nearly $225,000,000. At 10 cents per share, Plaintiff Feiner's 6,000 shares were worth $600 and Plaintiff Krissel's 25,000 shares were worth $2,500. (Id.)

less strong] inference of fraudulent intent." Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990).

Plaintiffs assert that Defendants' non-compliance with registration requirements gives rise to a strong inference of scienter. However, allegations of "conscious misbehavior" suggest scienter when they evince an intent to deceive or defraud. See Powers v. British Vita P.L.C., 57 F.3d 176, 185 (2d Cir. 1995) (issue is whether Plaintiff's allegations "raised an inference of intent to defraud based on facts demonstrating 'conscious behavior' evincing such intent"). Plaintiffs cite Novak v. Kasaks for the proposition that a strong inference of scienter is alleged where the complaint alleges that Defendants "engaged in deliberately illegal behavior." 216 F.3d 300, 311 (2d Cir. 2000). However, the cases on which Novak relies when stating that an inference of scienter "may arise where the complaint sufficiently alleges that the defendants…engaged in deliberately illegal behavior," id., involve insider securities trading, see Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 168-69 (2d Cir. 1999), and knowing sale of a company's stock at an unwarranted discount, see Schoenbaum v. Firstbrook, 405 F.2d 215, 219 (2d Cir. 1968) (en banc). Novak, 216 F.3d at 308. Unlike these cases where intent to defraud and deceive is readily apparent, here Defendants' actions (or inactions) could have been made for legitimate business reasons in light of the stock's value, trading volume, and costs of compliance. Because Plaintiffs have failed to plead facts with particularity which give rise to a strong inference of scienter, Count I fails to state a claim.

**B.     Plaintiffs' Section 20A Claim**

Plaintiff Krissel's claim for insider trading against Xcelera is also deficient. Section 20A provides, "Any person who violates any provision of this title or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable…to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased…or sold…securities of the same class." 15 U.S.C. § 78t-1(a).  Here, Plaintiffs fail to allege a valid claim of Rule 10b-5, and therefore, because a Section 20A claim depends upon a valid predicate violation of the Exchange Act, Count II fails to state a claim against Xcelera for insider trading violations.  See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 703 (2d Cir. 1994) (dismissing Section 20A claim for lack of predicate violation of the Exchange Act).  Furthermore, the claim fails because Section 20A necessarily depends upon allegations involving "the purchase or sale of securities" other than Plaintiff Krissel's sale.  15 U.S.C. § 78t-1(a).  To violate Section 20A, Plaintiff Krissel's sale had to be made "contemporaneously with the purchase or sale of securities that is the subject of such violation," but no other purchases or sales are alleged.  Id.

### C.    Plaintiffs' Section 20(a) Claim

The Third Amended Complaint also fails to state a claim against VBI, Alexander Vik, and Gustav Vik under Section 20(a) of the Exchange Act, which states that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally…unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  15 U.S.C. §

78t(a).  Because a violation of Section 20(a) of the Exchange Act depends upon a well-pleaded claim under Rule 10b-5, Count III fails to state a claim.

### D.      Plaintiffs' Claim for Breach of Fiduciary Duties

Count IV alleges that Xcelera, the Vik Defendants, and Kugler breached their fiduciary duties and/or aided and abetted the breach of fiduciary duties in connection with soliciting the Plaintiffs to sell Xcelera common stock without disclosing any information about the Company.  Third Am. Compl. ¶ 74.  The lack of a valid Rule 10b-5 claim deprives this Court of subject matter jurisdiction over the breach of fiduciary duty claim.[7]  However, even if the Court had subject matter jurisdiction, the Count IV fails to state a claim.

This Court dismissed Plaintiffs' original claim for breach of fiduciary duty because it "fail[ed] to state 1) any facts which constitute a 'special factual relationship' between Director Defendants and Plaintiff; or 2) facts which show the Director Defendants have taken advantage of Plaintiff for their own benefit, as required by Cayman Islands law."  Feiner Family Trust v. VBI Corp., 2007 U.S. Dist. LEXIS 66916, *25-*26 (S.D.N.Y. Sept. 11, 2007).[8]

The Third Amended Complaint still fails to describe any contact between Plaintiffs and Defendants that could give rise to a fiduciary relationship, such as acting as

---

[7] Plaintiffs withdrew their First Amended Complaint, which sought to plead diversity jurisdiction, after Defendants' opposition brief noted that Plaintiffs had failed to allege facts sufficient to meet the amount in controversy requirement.  Plaintiffs then added claims under the Exchange Act in order to meet the jurisdiction requirement.

[8] Cayman Islands law provides that "in general, directors do not, solely by virtue of the office of director, owe fiduciary duties to the shareholders, collectively or individually," Peskin v. Anderson, [2001] 1 B.C.L.C. 372 ¶ 28, unless there is a "special factual relationship between the directors and the shareholders in the particular case" id. ¶ 33; see also Kyrris v. Oldham, 2003 WL 22358328 ¶¶ 122, 146 ("the relevant duties are, absent special circumstances, owed exclusively to the company").

Plaintiffs' agent in the context of a specific transaction, or supplying them with specific information and advice on which they relied, or failing to make disclosures of insider information in the context of a take-over.  See Peskin v. Anderson, [2001] 1 B.C.L.C. 372 ¶34 (listing circumstances constituting a special factual relationship).  To the contrary, the Third Amended Complaint alleges that Feiner telephoned Xcelera and was then solicited by Kugler and also that Krissel sold his shares to "an agent" after negotiating the price with Kugler. [9]  (See Third Am. Compl. ¶¶ 3, 7, 8.)  Because these allegations evince that Plaintiffs and Defendants did not have a special factual relationship within the meaning of Peskin, the fiduciary claim under Cayman Islands law fails.

## V.   Conclusions

Plaintiffs' motion for leave to file an amended complaint is denied with prejudice and without leave for further amendment.  Plaintiffs fail to state a claim in Count I of the Third Amended Complaint for violations of Section 10(b) of the Exchange Act and Rule 10b-5.  As a result, both Counts II and III fail for lack of a predicate violation.  Because this Court does not have subject matter jurisdiction over Count IV, as acknowledged by Plaintiffs', see supra, Plaintiffs' claim for breach of fiduciary duty under Cayman Islands law fails.

---

[9] It is noteworthy that Feiner does not elaborate on the alleged communication with Kugler. Especially since, at oral argument on September 11, 2008, Plaintiffs' counsel acknowledged that Plaintiff Feiner initiated the contact with Kugler, and that any solicitation by Kugler came as a result of Feinter's contact with him.  (Tr. at 8.)  It is also noteworthy that Krissel does not identify the alleged agent of the Defendants.

IT IS SO ORDERED.

Dated: New York, New York
December $\underline{15}$, 2008

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Opinion and Order sent to:

Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 1910
New York, NY 10119
Attn:   Jeffrey Abraham
         Jorge Salva
Tel:    212-279-5050
Fax:    212-279-3655
Counsel for Plaintiff

Wilmer Cutler Pickering Hale & Dorr L.L.P.
399 Park Avenue
New York, NY 10022
Attn:   Peter Macdonald
Tel:    212-937-7200
Fax:    212-937-7300
Counsel for Director Defendants

Becker, Glynn, Melamed & Muffly, LLP
299 Park Avenue
New York, NY 10171
Attn:   Robin Alperstein
Tel:    212-888-3033
Fax:    212-888-0255
Counsel for Xcelera.com, Inc.